UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TEL COMM TECHNOLOGIES, INC. | : | |
| et. al., | : | |
|       Plaintiffs | : | |
| | : | |
|     v. | : | CIVIL ACTION NO. |
| | : | 3:04-cv-770 (JCH) |
| CITY OF BRIDGEPORT, | : | |
| CONNECTICUT, et al., | : | |
|       Defendants | : | DECEMBER 21, 2006 |

**RULING ON DEFENDANTS MOTION TO DISMISS [Doc. No. 58] AND
PLAINTIFF'S MOTION TO AMEND COMPLAINT [Doc. No. 63]**

I.    INTRODUCTION

The plaintiffs are providers of pay telephone service who seek to install public

pay telephones in or on the public rights of way of the City of Bridgeport.  They bring

this action against the City, as well as the director and deputy director of its Department

of Public Facilities.  In their Complaint [Doc. No. 1], the plaintiffs claim a direct violation

of their rights under the section of the Federal Telecommunications Act of 1996 ("TCA")

entitled Removal of barriers to entry, 47 U.S.C. § 253(a) and § 253(c).  In addition, the

plaintiffs have now moved to amend their complaint to add claims under the Supremacy

Clause of the United States Constitution.  The defendants oppose that motion and

move pursuant to Rule 12(b)(6), Fed.R.Civ.P., to dismiss, or for judgment on the

pleadings pursuant to Rule 12(c), as to the plaintiffs' original claims.[1]

---

[1]The court's consideration of the present motions was delayed as a result of bankruptcy proceedings of former plaintiff Bax Group, Inc.  The court granted  Bax Group, Inc.'s Motion to Withdraw [Doc. No. 56] in December 2005 [Doc. No. 57].  The matter was further delayed by a reported settlement which required Bankruptcy Court approval.  The parties recently reported that the settlement could not be finalized.

II.    **MOTION TO DISMISS**

In this section of its Ruling, the court discusses the plaintiffs' "direct claims," that is, those claims asserted under the disputed private right of action for violations of 47 U.S.C. § 253.  It reaches this issue before addressing the motion to amend the complaint, because the proposed amendment to the complaint does not materially alter those alleged claims that depend on the existence of a private right of action.[2]

A.    **Standard of Review**

In deciding a motion to dismiss, the court takes the allegations of the Complaint as true and construes them in a manner favorable to the pleader.   Hoover v. Ronwin, 466 U.S. 558, 587 (1984); see Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).  The court must draw all reasonable inferences in the plaintiff's favor.  See, e.g., Yung v. Lee, 432 F.3d 132, 146 (2d Cir. 2005) (discussing Rule 12(b)(6) motion to dismiss); Lunney v. United States,  319 F.3d 550, 554 (2d Cir. 2003) (internal citations omitted) (discussing Rule 12(b)(1) motion to dismiss).

A motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), tests only the adequacy of the complaint.  United States v. City of New York, 359 F.3d 83, 87 (2d Cir. 2004).  A Rule 12(b)(6) motion can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

---

[2]To the extent that the plaintiffs have argued that the original Complaint also stated claims for relief pursuant to the Supremacy Clause of the United States Constitution, Art. VI, cl. 2., the court will not reach that issue in the discussion of the Rule 12(b)(6) and Rule 12(c) motion.  It will discuss it when it addresses the plaintiffs' Motion to Amend [Doc. No. 63].

to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Such a motion cannot be granted simply because recovery appears remote or unlikely on the face of a complaint. Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id. (quotation omitted). However, "bald assertions and conclusions of law will not suffice" to meet this pleading standard. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996). The court considers Rule 12(c) motions using the same standard that it applies to Rule 12(b)(6) motions to dismiss. Cleveland v. Caplaw Enterprises, 448 F.3d 518, 521 (2d Cir. 2006).

###### B.     Facts

Chapter 12.50 of the Bridgeport Municipal Code requires entities wishing to install or maintain pay telephones on the City's public rights of way to obtain permits for that purpose. The second proposed Amended Complaint (hereinafter "Amended Complaint"), like the original Complaint, alleges that the defendants delayed issuing a Request for Permits ("RFP") and subsequently delayed review of the plaintiffs' applications to install payphones on public right-of-ways. Proposed Am. Compl. ¶ 21-26 [Doc. No. 63-2]. The plaintiffs allege that the defendants misrepresented the status of the decision on the plaintiffs' applications in order to delay this lawsuit "and to prevent the implementation of Chapter 12.50. Id. at ¶ 25; see also Plfs.' Reply to Defs.' Mem. Opp. Plfs.' Mot. Amend at 4 [Doc. No. 66]. They allege that Chapter 12.50 "violates 47 U.S.C. § 253(a) in that the City's ongoing failure to act upon the applications of the Plaintiffs herein and approve the Plaintiffs' permit applications acts as a prohibition, or otherwise has the effect of prohibiting, the ability of the Plaintiffs to

3

provide interstate and intrastate telecommunications service." Amended Complaint at ¶ 31.  Additionally, the plaintiffs allege that Bridgeport has discriminated against them by allowing competitors to use the public rights-of-way.   Id. at ¶¶ 30-32.

      **C.**    **Discussion**

      The defendants argue that section 253 of Title 47 of the United States Code does not provide a private right of action for the plaintiffs.  Over the years, "the Supreme Court has come to view the implication of private remedies in regulatory statutes with increasing disfavor."  Hallwood Realty Partners, L.P., 286 F.3d 613, 618 (2d Cir. 2002).  In 1975, the Supreme Court established four factors that courts should consider in deciding whether a statute, that does not expressly provide for a private right of action, nevertheless implies one:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted – that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?  Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?  And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

Cort v. Ash, 422 U.S. 66, 78 (1975) (internal citations and quotation marks omitted). Several years later, the Supreme Court clarified that courts should not give all of these factors equal weight in deciding whether a statute implies a private right of action. Touche Ross & Co. v. Redington, 442 U.S. 560, 575-76 (1979).  The ultimate question is "whether Congress intended to create the private remedy asserted."  Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 15-16 (1979); see Touche Ross, 442 U.S. at 568.

The court must begin its analysis of Congressional intent by considering the language of the statute itself.  <u>Transamerica</u>, 444 U.S. at 16; <u>Touche Ross</u>, 442 U.S. at 568.  An implied private right of action requires some affirmative evidence of such legislative intent, whether in the statutory language or legislative history.  <u>See</u> <u>TCG Detroit</u>, 206 F.3d at 624 (citing <u>Touche Ross</u>, 442 U.S. at 575-76 (holding that no private right of action existed because neither the statutory text nor the legislative history spoke to the question of private remedies)).  "The remaining <u>Cort</u> factors (other than congressional intent) now enter into the analysis only as possible indicia for legislative intent."  <u>Hallwood</u>, 286 F.3d at 619 n. 7 (citing <u>Health Care Plan, Inc. v. Aetna Life Ins. Co.</u>, 966 F.2d 738, 749 (2d Cir. 1992)).

Section 253 does not expressly create a private right of action.  <u>See, e.g.</u>, <u>TCG Detroit v. City of Dearborn</u>, 206 F.3d 618, 623 (6th Cir. 2000); <u>Omnipoint Commc'ns, Inc. v. Port Authority of New York & New Jersey</u>, No. 99 Civ. 0060(BJS), 1999 WL 494120, at *6 n.5 (S.D.N.Y. July 13, 1999).  No controlling authority exists on the question of whether it implies a private right of action.  <u>See Omnipoint Commc'ns</u>, 1999 WL 494120, at *6 n.5; <u>see also</u> <u>TCG New York, Inc. v. City of White Plains</u>, 305 F.3d 67, 74 (2d Cir. 2002) (not reaching the issue of whether section 253 gives rise to a private right of action); <u>City of Rome v. Verizon Commc'ns, Inc.</u>, 362 F.3d 168, 178 n. 6 (2d Cir. 2004) (not reaching the issue of whether section 253(c) gives rise to a private right of action).  The courts that have addressed the question of whether section 253 implies a private right of action have reached varying conclusions.  <u>Compare</u> <u>Bellsouth Telecommunications, Inc. v. Town of Palm Beach</u>, 252 F.3d 1169,1189-1191 (11th Cir. 2001) (holding that § 253 creates a private right of action for preemption of a state or

5

local law that "purports to address the management of the public rights-of-way, thereby potentially implicating subsection (c)"), TCG Detroit, 206 F.3d at 623-24 (holding that § 253(c) creates a private right of action), Sprint Telephony PCS, L.P. v. County of San Diego, 311 F. Supp. 2d 898, 906-10 (S.D.Cal. 2004) (holding that § 253(a) creates a private right of action), Pacific Bell Tel. Co. v. City of Hawthorne, 188 F. Supp. 2d 1169, 1172-75 (C.D.Cal. 2001) (holding that § 253(c), but not § 253(a) or § 253(b), creates a private right of action), New Jersey Payphone Assoc. v. Town of West New York, 130 F. Supp. 2d 631 (D.N.J. 2001) (same), and NextG Networks of New York, Inc. v. City of New York, 2004 WL 2884308, at *8-*10 (S.D.N.Y. 2004) (holding that § 253(a) and § 253(c) create private rights protected under 42 U.S.C. § 1983, without addressing the question of whether § 253(a) and § 253(c) also create private rights of action), with Qwest Corp. v. City of Santa Fe, 380 F.3d 1258, 1265-66 (10th Cir. 2004) (finding that § 253 creates no private right protected by 42 U.S.C. § 1983[3]), Cablevision of Boston, Inc. v. Public Improvement Comm'n of Boston, 184 F.3d  88, 107-09 (1st Cir. 1999) (Noonan, J., concurring) (stating that § 253(c) does not provide a private right of action), Qwest Comm'cns Corp. v. City of Greensboro, 440 F. Supp. 2d 480, 486-92 (M.D.N.C. 2006) (holding that § 253 creates no private right protected by 42 U.S.C. § 1983),

---

[3]The United States Supreme Court has held that:

whether a statutory violation may be enforced through § 1983 "is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute."  But the inquiries overlap in one meaningful respect-in either case we must first determine whether Congress intended to create a federal right. Thus we have held that "[t]he question whether Congress . . . intended to create a private right of action [is] definitively answered in the negative" where a "statute by its terms grants no private rights to any identifiable class."

Gonzaga Univ. v. Doe, 536 U.S. 273, 283-84 (2002) (internal citations omitted).

Pacific Bell Tel. Co. v. City of Walnut Creek, 428 F. Supp. 2d 1037, 1054 (N.D.Cal. 2006) (same, with respect to § 253(a) and § 253(c)), Qwest Commc'ns Corp. v. City of Berkeley, 202 F.Supp.2d 1085 (N.D.Cal. 2001) (finding no private right of action under § 253(a) or § 253(c)), and GST Tuscon Lightwave, Inc. v. City of Tuscon, 950 F.Supp. 968 (D.Ariz. 1996) (finding no private right of action under § 253(c)).

Having considered the analysis in these cases, and for the following reasons, the court agrees with those courts that have found that neither § 253(a) nor § 253(c) creates a private right of action.

### 1.    Statutory Text and Structure of Section 253

Before analyzing legislative intent, the court finds it helpful briefly to discuss the structure of section 253.  As noted by another district court, "[section] 253 is not a model of clarity."  Qwest Commc'ns Corp. v. City of Berkeley, 202 F.Supp.2d 1085, 1089 (N.D.Cal. 2001).  It provides, in pertinent part:

a) In general

No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

(b) State regulatory authority

Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this title, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.

(c) State and local government authority

Nothing in this section affects the authority of a State or local government

7

to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

(d) Preemption

If, after notice and an opportunity for public comment, the Commission determines that a State or local government has permitted or imposed any statute, regulation, or legal requirement that violates subsection (a) or (b) of this section, the Commission shall preempt the enforcement of such statute, regulation, or legal requirement to the extent necessary to correct such violation or inconsistency.

Subsection (c) provides state and local governments with a defense to alleged violations of § 253(a).  TCG New York, Inc. v. City of White Plains, 305 F.3d 67, 75 (2d Cir. 2002).  By its terms, subsection (c) expressly limits the scope of subsection (a). Subsection (c) has sometimes been referred to as a "savings clause," or "safe harbor" from the prohibition that subsection (a) imposes on state and local governments. Cablevision, 184 F.3d at 108 (Noonan, J., concurring); see Berkeley, 202 F.Supp.2d at 1092-93. Subsections (b) and (c) make sense only in the context of the affirmative limitation of subsection (a) on the power of state and local government.

## 2.      Section 253(a)

The text of § 253, although silent with respect to a private right of action, expressly requires the FCC to preempt enforcement of any state or local government law that "violates" subsection (a).  See 47 U.S.C. § 253(d).  Section 257(a) of Title 47[4]

_____

[4] Elimination of barriers

Within 15 months after February 8, 1996, the Commission shall complete a proceeding for the purpose of identifying and eliminating, by regulations pursuant to its authority

8

also requires the FCC to identify and eliminate market barriers for entrepreneurs and other small businesses trying to participate in the provision of telecommunications or information services.  However, nowhere does any particular text of the FTA suggest that Congress intended to create a private right of action for a violation of subsection (a).

Further, reading the FTA as a whole does not tend to support the conclusion that subsection (a) was intended to give rise to a private right of action under section 253(a). At least one section expressly forecloses a private right of action.  See 47 U.S.C. § 255; see also Sprint Telephony, 311 F.Supp.2d at 906.  Other sections of the FTA expressly provide a private right of action.  See, e.g., 47 U.S.C. §§ 207, 252(e)(6), 274(e).  The Sixth Circuit noted that the latter provisions state that they permit private suits as alternatives to administrative enforcement.  TCG Detroit, 206 F.3d at 624.  Therefore, it reasoned,  these provisions do not show that finding a private right of action where none is expressly provided would be counter to the statutory scheme.  Id.  However, these provisions also do not show that the statutory scheme requires implication of a private right of action where none is expressly provided.[5]  Moreover, given the strong

_____

under this chapter (other than this section), market entry barriers for entrepreneurs and other small businesses in the provision and ownership of telecommunications services and information services, or in the provision of parts or services to providers of telecommunications services and information services.

47 U.S.C. § 257(a).

[5]To the extent that the Eleventh Circuit's holding that Congress intended to create a private right of action for the preemption of state or local laws that "purport[] to address the management of the public rights-of-way, thereby potentially implicating subsection (c)," Palm Beach, 252 F.3d at 1189-1191, may be read as a holding that a private right of action exists for violations of subsection (a) that implicate subsection (c), the court will address that issue in its discussion of subsection (c).  See Part II.C.3, infra.

role that the FTA accords the federal government, the court finds it unlikely that Congress intended to provide a private right of action to enforce every provision of the FTA other than § 255, the only section of which this court is aware that expressly forecloses a private right of action.  See Berkeley, 202 F.Supp.2d at 1092 n. 6.  The court is unaware of any evidence in the legislative history suggesting that Congress intended to create a private right of action for violations of subsection (a).[6]  In a situation such as this, where the court has found no evidence in either the language of the statute or the legislative history that Congress intended to create a private right of action for violations of § 253(a), a general Congressional intent that subsection (a) should protect telecommunications providers would not support the inference that Congress meant to create a private right of action on their behalf.  See Transamerica, 444 U.S. at 24.

The third and fourth Cort factors also do not change the court's view of Congressional intent.  The third factor, whether the court could imply a private right of action consistent with the legislative scheme, is unclear in this case.  Such implication might be consistent with the legislative scheme, insofar as it might "help to promote more rapid deployment of telecommunication services."  Berkeley, 202 F.Supp.2d at 1092 (citing TCG Detroit, 977 F.Supp. at 841 (citing H.R.Conf.Rep. No. 104-458, at 113, reprinted in 1996 U.S.C.C.A.N. 124)).  However, the statement of purpose for chapter 5 of the FTA, the chapter that contains § 253, focuses exclusively on the FCC and appears concerned with protecting the public, rather than telecommunications

_____

[6]To the extent the plaintiffs may argue that Senator Gorton's statements suggest a private right of action under subsection (a) when subsection (c) is implicated as a defense, this issue will be discussed in relation to subsection (c), in Part II.C.3 of this ruling.

10

providers.  See 47 U.S.C. § 151.[7]

With respect to the fourth Cort factor, the proposed private right of action under § 253(a) does not appear to be "traditionally relegated to state law, in an area basically the concern of the States."  Cort, 422 U.S. at 78; see Berkeley, 202 F.Supp.2d at 1092. However, as discussed above, Congress expressly created private causes of action for violations of certain parts of the FTA, and not for the entire statute.  Even though the federal government regulates telecommunications, this fact does not persuade the court that Congress intended a private cause of action for violations of § 253(a) in particular.

The court concludes that there is no express or implied indication that Congress intended to create a private right of action under § 253(a), and there is some indication that it did not intend to create such a right of action.  Therefore, it finds no private right of action.  It grants the defendants' motion to dismiss and the defendants' motion for judgment on the pleadings with respect to the plaintiffs' direct claims under this

---

[7]

For the purpose of regulating interstate and foreign commerce in communication by wire and radio so as to make available, so far as possible, to all the people of the United States, without discrimination on the basis of race, color, religion, national origin, or sex, a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of the national defense, for the purpose of promoting safety of life and property through the use of wire and radio communications, and for the purpose of securing a more effective execution of this policy by centralizing authority heretofore granted by law to several agencies and by granting additional authority with respect to interstate and foreign commerce in wire and radio communication, there is created a commission to be known as the "Federal Communications Commission", which shall be constituted as hereinafter provided, and which shall execute and enforce the provisions of this chapter.

47 U.S.C. § 151.

subsection.[8]

### 3.   Section 253(c)

The court reaches the same conclusion with respect to subsection (c).

Subsection (c) must be read as part of section 253.  When so read, it is clear that

subsection (c) merely sets clear limits on the scope of subsection (a).  Nothing in the

language of subsection (c) states or implies a private right of action for

telecommunications providers.  See § 253(c) ("Nothing in this section affects the

authority of a State or local government to . . .,"); TCG New York, Inc. v. City of White

Plains, 305 F.3d 67, 75, 77 (2d Cir. 2002) (holding that subsection (c) is a defense to

alleged violations of subsection (a)).  The clear language shows that § 253(c) was

intended to protect state and local governments, not telecommunications providers.

See Cablevision, 184 F.3d at 108 (Noonan, J., concurring); Berkeley, 202 F.Supp.2d at

1093; see also Rome, 362 F.3d at 182 (noting that the Second Circuit has not yet

determined whether § 253(c) could ever supply a municipality with an affirmative federal

cause of action).  Subsection (c) does impose limitations on the authority it reserves to

state and local governments, but these limitations merely define and narrow the

defense that subsection (c) provides to such governments.  To conclude that the

limitations on the saving clause create new private rights for telecommunications

providers would require a tortured reading of the statute.  Palm Beach, 252 F.3d at

---

[8]The defendants' motion is properly treated as a Rule 12(c) motion, insofar as it refers to the plaintiffs' original Complaint, because the defendants have already filed an answer to that Complaint.  Compare Fed.R.Civ.P. 12(b) (stating that motion thereunder shall be made beofre pleading) with Fed.R.Civ.P. 12(c) ("After the pleadings are closed . . . .").  However, the court grants, under Rule 12(b)(6), the Motion to Dismiss with respect to the Amended Complaint, which alleges direct violations of 47 U.S.C. § 253 in addition to the Supremacy Clause claim. See Part III, infra.

1187; Cablevision, 184 F.3d at 108 (Noonan, J., concurring); Berkeley, 202 F.Supp.2d at 1093.

This court's reading of the statute is consistent with the fact that subsection (d) does not expressly state that the FCC will enforce subsection (c).  The Second Circuit has held that, by providing for FCC enforcement of subsection (a), the language of § 253 "strongly implies that the FCC has the ability to interpret subsection (c) to determine whether provisions are protected from preemption."  TCG New York, 305 F.3d at 75; see also id. at 76 (holding that, "if § 253(d) were read to preclude FCC consideration of disputes involving the interpretation of § 253(c), it would create a procedural oddity where the appropriate forum would be determined by the defendant's answer, not the complaint," and that Congress had not indicated an intent to create an exception to the well-pleaded complaint rule).

A few courts have suggested that the fact that § 253(d) expressly provides for FCC enforcement of subsection (b), which is structurally similar to subsection (c), may imply that subsection (c) is excluded from FCC enforcement, and therefore subject to private enforcement.  See, e.g., Pacific Bell Tel. Co. v. City of Hawthorne, 188 F.Supp.2d 1169, 1173 (C.D.Cal. 2001).   The most complete version of this argument reasons that, if an entity can "violate" subsection (b), it logically must be able to "violate" subsection (c), and that the express statement in subsection (d) that the FCC has jurisdiction over violations of subsection (b), without mention of subsection (c), implies that some other enforcement mechanism must exist for subsection (c).  See Palm Beach, 252 F.3d at 1187 (discussing but ultimately disagreeing with this argument).  However, this court is bound by the Second Circuit's reading of the statute in TCG New

13

<u>York</u>, in which it held that subsection (c) is a defense to violations of subsections (a) and (b).  305 F.3d at 75.

Moreover, even if subsection (d)'s mention of subsection (b) were held to create ambiguity in the statutory language, an examination of the legislative history supports the conclusion that Congress did not intend to create a private remedy under subsection (c).  Senator Hollings' remarks on subsection (c) make clear that this subsection was added to the bill to benefit state and local governments, and not telecommunications providers such as the plaintiffs.  <u>See</u> <u>Qwest Communications Corporation v. City of Berkeley</u>.  202 F.Supp.2d at 1093 (quoting 141 Cong.Rec. S8174 (daily ed. June 12, 1995)). Thus, the first <u>Cort</u> factor lends support to the conclusion that Congress did not intend to create a private right of action for telecommunications providers.

The court finds no implication of a private right of action in Senator Gorton's remarks that any challenge to local governments' powers over public rights of way, which subsection (c) preserves, will take place in federal district courts "and that the Federal Communications Commission will not be able to preempt such actions." 141 Cong.Rec. S8213 (June 13, 1995); <u>compare</u> <u>Berkeley</u>, 202 F.Supp.2d at 1095-96, <u>with</u> <u>Palm Beach</u>, 252 F.3d at 1191; <u>Hawthorne</u>, 188 F.Supp.2d at 1173-74; <u>see also</u> <u>Sprint Telephony PCS, L.P. v. County of San Diego</u>, 311 F.Supp.2d 898, 908 (S.D.Cal. 2004) (holding that Gorton's remarks show congressional intent to create a private right of action for subsection (a), because subsection (c) is an exception or qualification to subsection (a)).  Senator Gorton introduced his amendment as a compromise between an original version of section (d) that gave the FCC jurisdiction to preempt any act in

14

violation of § 253 and the proposed Feinstein-Kempthorne amendment, which would have deprived the FCC of such jurisdiction and "shift[ed] the forum" for preemption challenges arising under subsections (a), (b), or (c) to the federal district courts.  <u>See</u> <u>Berkeley</u>, 202 F.Supp.2d at 1094; 141 Cong.Rec. S8212-13.

Senator Gorton expressed no affirmative intent to create a new private right of action, but only to prevent the FCC from preempting local governments' control over their public rights of way.  <u>Berkeley</u>, 202 F.Supp.2d at 1095-96. As Judge Ilston held in <u>Berkeley</u>, Senator Gorton's statements that challenges to such local control should take place in federal district court and that the FCC should not be able to preempt such local control do not imply a private right of action.  <u>Id.</u> at 1096.  Senator Gorton's remarks, viewed as a whole, make clear that he is referring to the forum in which challenges may be brought, rather than to the parties who may bring them.  <u>See</u> <u>Palm Beach</u>, 252 F.3d at 1191 (quoting 141 Cong.Rec. S8306, S8308 (June 14, 1995) (explaining that the Feinstein-Kempthorne amendment "would simply" "deprive the FCC of any jurisdiction over a State law which deliberately prohibited or frustrated the ability of any telecommunications entity to provide competitive service . . . and each such challenge would have to be decided in each of the various Federal district courts around the country," and that the Gorton amendment was motivated by the concern that the "determination of whether [states or localities] have impeded competition, not by the way they manage trees or rights of way, but by the way they deal with substantive law dealing with telecommunications entities . . . should be decided in one central place, by

the FCC").[9]   Moreover, even if Senator Gorton's remarks could be read to envision suits

by private parties, private parties may bring Supremacy Clause challenges in federal

district court regardless of whether the statute gives rise to a private right of action.

 Berkeley, 202 F.Supp.2d at 1096; see Part III.C.2, infra.  Therefore, the legislative

history does not support implication of a private right of action under subsection (c), nor

under subsection (a) in cases implicating subsection (c).

        The analysis of the third and fourth Cort factors is essentially the same with

respect to § 253(c) as with respect to § 253(a).  See Part II.C.2, supra.  Even if the

fourth factor could be viewed as consistent with a finding of a private right of action, it

nevertheless does not persuade the court to find a private right of action in light of the

dearth of other evidence that Congress intended to imply such a right.

        Therefore, the court finds neither express nor implied congressional intent to

create a private right of action.  The court concludes that Congress did not intend to

imply a private right of action for § 253(c).  It therefore grants the defendants' motion to

dismiss and motion for judgment as to any direct claims for violations of that

subsection.

## III.   MOTION TO AMEND

        The plaintiffs move to amend their complaint to add a claim that the defendants

have violated the Supremacy Clause of the United States Constitution, Art. VI, cl. 2.

_____

        [9]After concluding that Senator Gorton's remarks reflected an intent to create different
forums based on the subject of the ordinance at issue and without further explanation, the
Eleventh Circuit held that Congress intended to create a private right of action for violations of
section 253(c).  Palm Beach, 252 F.3d at 1191.  This court does not find the latter conclusion
warranted and cites Palm Beach only for the holding that section 253(d) was intended to shift
the forum in which challenges to state or local ordinances could be decided where such
ordinances concern management of the public rights of way.

The court grants in part and denies in part the motion to amend.

### A.      Standard of Review

Pursuant to Rule 15(a), Fed.R.Civ.P., "[a] party may amend the party's pleading

once as a matter of course at any time before a responsive pleading is served . . . .

Otherwise a party may amend the party's pleading only by leave of court or by written

consent of the adverse party; and leave shall be freely given when justice so requires."

Fed.R.Civ.P. 15(a); Prescription Plan Svc. Corp. v. Franco, 552 F.2d 493, 498 (2d Cir.

1997).  In the present case, no party argues that the plaintiffs should be able to amend

their complaint "as a matter of course."  Therefore, the court considers whether justice

requires that it grant plaintiffs leave to amend their Complaint.

A decision to grant or deny a motion to amend is within the sound discretion of

the trial court.  Foman v. Davis, 371 U.S. 178, 182 (1962).  The Supreme Court has

emphasized that amendment should normally be permitted and has stated that refusal

to grant leave without justification is "inconsistent with the spirit of the Federal Rules."

Rachman Bag Co. v. Liberty Mutual Insurance, 46 F.3d 230, 235 (2d Cir.1995) (quoting

Foman, 371 U.S. at 182).  "In the absence of any apparent or declared reason-such as

undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to

cure deficiencies by amendments previously allowed, undue prejudice to the opposing

party . . . etc.–the leave should, as the rules require, be 'freely given'." Id. (quoting

Foman, 371 U.S. at 182).  "The rule in this Circuit has been to allow a party to amend

its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith."

Block v. First Blood Associates, 988 F.2d 344, 350 (2d Cir. 1993).

In determining what constitutes "prejudice," this court must consider the following

17

factors: (1) whether the amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (2) whether the amendment would significantly delay the resolution of the dispute; or (3) whether the amendment would prevent the plaintiff from bringing a timely action in another jurisdiction.  See id. at 350.  "The longer the period of unexplained delay, the less will be required of the non-moving party in terms of a showing of prejudice."  Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 47 (2d Cir.1983) (internal citation omitted).

> Where[, as here,] a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend "shall be freely given," must be balanced against the requirement under Rule 16(b) that the Court's scheduling order "shall not be modified except upon a showing of good cause."  Fed.R.Civ.P. 15(a), 16(b).  A finding of good cause depends on the diligence of the moving party.

Grochowski v. Phoenix Const., 318 F.3d 80, 86 (2d Cir. 2003) (internal citations omitted); see also 6A Federal Practice and Procedure § 1522.1 at 231 (stating that the good cause exception of Rule 16(b) requires "the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension").

Finally, regardless of whether a scheduling order has issued, the court may deny a motion to amend "[w]here the amended portion of the complaint would fail to state a cause of action."  Parker v. Columbia Pictures Indus., 204 F.3d 326, 339 (2d Cir. 2000) (internal citation omitted).  "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."  Dougherty v. Town of North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002) (internal citation omitted).

18

**B.     Facts**

The factual allegations in the Amended Complaint are materially the same as those in the original Complaint.  The Amended Complaint asserts that these facts give the plaintiffs the right to bring claims for federal preemption, pursuant to the Supremacy Clause of the United States Constitution, Art. VI, cl. 2.

**C.     Discussion**

**1.     Prejudice, Bad Faith, and Good Cause**

Although the litigation could have proceeded more smoothly had the plaintiffs acted earlier to amend the Complaint, the proposed amendment does not add new facts to the allegations.  The legal theory that the plaintiffs seek to add, that is, preemption under the Supremacy Clause of the United States Constitution, should not take the defendants by surprise.  As the plaintiffs point out, they first argued that the Supremacy Clause would permit the court to hear their claims even in the absence of a federal private right of action in their memorandum in support of their Motion for Judgment by Default, in November 2004, over one year before the defendants filed their motion to dismiss.  See Plfs.' Mem. Supp. Mot. J. by Default at 4-6  [Doc. No. 19]. They also raised this argument in opposition to the motion to dismiss.  Plfs.'s Mem. Opp. Mot. Dismiss at 18-19 [Doc. No. 60].  The court does not find that the plaintiffs have acted in bad faith in delaying amendment of their Complaint.  It finds that permitting the proposed amendment might prolong the litigation, but also finds that any prejudice to the defendants is minimal, in light of the previous notice that the plaintiffs intended to assert Supremacy Clause claims and the parties' argument on this issue in connection with the motion to dismiss.

19

The scheduling order in this case set a deadline of July 9, 2004 for amended pleadings, and the motion to amend the complaint was not filed until January 2006. The plaintiffs had good cause for their initial delay in filing an amended complaint, because the court granted a motion for entry of default judgment against all defendants in early November 2004, and then granted a motion to set aside this default in early February 2005.  The plaintiffs filed their first motion to amend the Complaint in February 2005; however, that motion did not relate to Supremacy Clause claims.  See Plfs.' 1st Mot. Amend Compl. [Doc. No. 35].

It is not obvious that the plaintiffs' subsequent delay of eleven months in filing the Amended Complaint was justified by good cause.  The plaintiffs' use of Supremacy Clause arguments in their previous motions show both that they could have filed the Amended Complaint earlier and that they may have believed that the initial Complaint sufficiently alleged a Supremacy Clause preemption claim.  Although the court does believe the plaintiffs could have pursued this litigation more diligently by filing an amended complaint earlier, it must balance the standards of Rule 16(b) against those of Rule 15(a).  It concludes that the prejudice in this case is so low that the interests of justice require that the court grant leave to amend, at least to the extent that the proposed Supremacy Clause claims are viable.

### 2.  Futility

The court next considers whether the proposed amendment would be futile, or whether it would survive a Rule 12(b)(6) motion to dismiss.

> a.    Primary Jurisdiction.  The defendants argue, in response to the plaintiffs' argument in opposition to the motion to dismiss, that the Supremacy

20

Clause claims raised by the plaintiffs are more appropriately considered by the FCC

than this court.  Although the doctrine of primary jurisdiction would permit the court to

refer a question to the FCC in appropriate circumstances, see TCG New York, 305 F.3d

at 74, the court does not find it appropriate to apply this doctrine at this point in the

litigation.  Having considered the four factors that the Second Circuit has identified as

relevant to the primary jurisdiction determination, see Ellis v. Tribune Television Co.,

443 F.3d 71, 82-83 (2d Cir.2006), the court does not find that the facts alleged establish

that "preliminary reference of issues to the agency will promote that proper working

relationship between court and agency that the primary jurisdiction doctrine seeks to

facilitate."  Pharm. Research & Mfrs. of America v. Walsh,  538 U.S. 644, 673 (2003)

(Breyer, J, concurring).[10]

> b. Federal Preemption.  Regardless of whether a federal
statute gives rise to a private right of action, a plaintiff may challenge the statute under
the Supremacy Clause of the United States Constitution.

> A claim under the Supremacy Clause that a federal law preempts a state
> regulation is distinct from a claim for enforcement of that federal law.  The
> primary function of the Supremacy Clause is to define the relationship
> between state and federal law. It is essentially a power conferring
> provision, one that allocates authority between the national and state
> governments. . . .  A claim under the Supremacy Clause simply asserts
> that a federal statute has taken away local authority to regulate a certain
> activity. In contrast, an implied private right of action is a means of
> enforcing the substantive provisions of a federal law. It provides remedies,
> frequently including damages, for violations of federal law by a

---

[10]This holding does not preclude the possibility that development of the record will lead
the court to apply this doctrine in the future.  See Global Network Communications, Inc. v. City
of New York,  No. 05-3298-cv, 2006 WL 2106632, *7 (2d Cir. July 21, 2006) (slip op.) (citing
TCG New York, 305 F.3d at 74-75) (noting that, "although . . . we express no view on the
matter, it is possible that after development of the record the district court will find that
application of the doctrine of primary jurisdiction is warranted . . .").

> government entity or by a private party. The mere coincidence that the
> federal law in question in this case contains its own preemption language
> does not affect this distinction.

Western Air Lines, Inc. v. Port Authority of New York and New Jersey, 817 F.2d 222,

225-26 (2d Cir. 1987) (internal citation and quotation marks omitted).  Therefore, a

Supremacy Clause claim does not rely on the existence of a private right of action

under 47 U.S.C. § 253.  See Puerto Rico Tel. Co. v. Municipality of Guayanilla, 450

F.3d 9 (1st Cir. 2006) (not reaching the issue of whether 47 U.S.C. § 253 creates a

private right of action, but holding that § 253(a) pre-empted a local ordinance);  Qwest

Corp. v. City of Santa Fe, 380 F.3d 1258 (10th Cir. 2004) (finding no private right of

action under § 253 but nevertheless considering Supremacy Clause challenge based

on § 253); see also Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96 n.14 (1983) (internal

citations omitted) ("It is beyond dispute that federal courts have jurisdiction over suits to

enjoin state officials from interfering with federal rights.  A plaintiff who seeks injunctive

relief from state regulation, on the ground that such regulation is pre-empted by a

federal statute which, by virtue of the Supremacy Clause of the Constitution, must

prevail, thus presents a federal question which the federal courts have jurisdiction under

27 U.S.C. § 1331 to resolve").

"[T]he Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that

'interfere with, or are contrary to,' federal law."  Hillsborough Cty. v. Automated Med.

Labs., Inc., 471 U.S. 707, 712-13 (1985) (quoting Gibbons v. Ogden, 9 Wheat. 1, 211,

6 L.Ed. 23 (1824) (Marshall, C.J.)); see, e.g., Santa Fe, 380 F.3d at 1269-71 (examining

provisions of municipal ordinance for conflicts with § 253); Western Air Lines, 817 F.2d

at 225 (holding that the Supremacy Clause would permit claims alleging that a local

regulation was preempted by a federal statute).  The Second Circuit has held that Congress did not intend 47 U.S.C. § 253 to preempt state law completely.  City of Rome v. Verizon Commc'ns, Inc., 362 F.3d 168,177-80, 183 (2d Cir. 2004).  However, § 253 does expressly preempt certain types of state regulation.  Therefore, the court must determine whether the Amended Complaint states a claim for a violation of section 253's preemption provisions.  See Qwest Commc'ns v. City of Berkeley, 433 F.3d 1253, 1256 (9th Cir. 2006) ("Berkeley II"); Santa Fe, 380 F.3d at 1269; TCG New York, Inc. v. City of White Plains, 305 F.3d 67 (2d Cir. 2002).

The court addresses, first, whether the Amended Complaint has alleged that the local provision at issue is prohibitive in effect. Berkeley II, 433 F.3d at 1256; Santa Fe, 380 F.3d at 1269; TCG New York, 305 F.3d at 76-77.  It then considers whether the facts alleged in the Amended Complaint establish that any alleged prohibitions are saved from preemption by § 253(c).  Berkeley II, 433 F.3d at 1258; Santa Fe, 380 F.3d at 1269; TCG New York, 305 F.3d at 76-77.  In this analysis, while the court accords some deference to Federal Communications Commission decisions interpreting the scope of § 253(a) and § 253(c), such decisions are not controlling.  TCG New York, 305 F.3d at 76.

i.      Prohibitive Effect.  With respect to the first step in this analysis, the Second Circuit has held:

> Courts have held that a prohibition does not need to be complete or "insurmountable" to run afoul of § 253(a). See, e.g., RT Communications, Inc. v. FCC, 201 F.3d 1264, 1268 (10th Cir.2000).  Additionally, the FCC has stated that, in determining whether an ordinance has the effect of prohibiting the provision of telecommunications services, it "consider[s] whether the ordinance materially inhibits or limits the ability of any competitor or potential competitor to compete in a fair and balanced legal

and regulatory environment." <u>Cal. Payphone Ass'n</u>, 12 F.C.C.R. 14191,
1997 WL 400726, at ¶ 31 (1997). We agree with these precedents.

<u>Id.</u>  Although the plaintiffs' factual allegations involve regulatory actions by Bridgeport

officials rather than just the terms of an ordinance, the Amended Complaint sufficiently

alleges that the actions of Bridgeport officials in delaying review of their applications,

combined with the Chapter 12.50 permitting rules, were prohibitive in effect.  See <u>TCG</u>

<u>New York</u> at 76-77 (holding that "the extensive delays in processing TCG's request for a

franchise have prohibited TCG from providing service for the duration of the delays").

The court notes, however, that it does not read the Amended Complaint as

alleging that federal law preempts the provisions of Chapter 12.50 in any other way.

The Amended Complaint does contain the following conclusory allegations, which are

general enough to encompass many different claims:  "That the provisions of 47 U.S.C.

§ 253 preempt the applicable sections of Chapter 12.50 to the extent that they are

inconsistent [sic]," Proposed Am. Compl. at ¶¶ 31; <u>see id.</u> at ¶ 34; "In the alternative,

the Plaintiffs allege that they can maintain this action, pursuant to the Supremacy

Clause of the United States Constitution, Article VI, cl.2, 47 U.S.C. § 253 (a) preempts

Chapter 12.50 subject to the safe harbor provisions contained in 47 U.S.C. § 253 (c),

when the Federal Act is inconsistent [sic] with local regulations," <u>id.</u> at ¶ 29; and:

> Chapter 12.50 of the Bridgeport Municipal Code violates 47 U.S.C. § 253
> because it has the effect of banning the Plaintiffs from providing payphone
> services on the City's public right-of-ways while allowing their competitors
> to use the public right-of-ways to provide such payphone service.  Section
> 47 U.S.C. § 253(c) expressly requires competitive neutrality and non-
> discriminatory administration of the public right-of-ways of the City of
> Bridgeport.  That the provisions of 47 U.S.C. § 253 preempt the applicable
> sections of Chapter 12.50 to the extent that they are inconsistent [sic],"

<u>id.</u> at ¶ 32.  These allegations may be intended merely to clarify that the substantive

24

claim described above is asserted pursuant to the Supremacy Clause.  To avoid future confusion, however, the court wishes to make clear that these statements are insufficient to allege challenges to other, as yet unspecified, provisions of Chapter 12.50.  Pursuant to the lenient pleading standard of Rule 8(a)(2), Fed.R.Civ.P., a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 512 (2002) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  The Second Circuit has defined fair notice as "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." <u>Twombly v. Bell Atlantic Corp.</u>, 425 F.3d 99, 107 (internal citation omitted).  Chapter 12.50 is nine pages long.  Conclusory allegations that Chapter 12.50 is inconsistent with federal law, without more, do not give the defendants enough information to prepare an answer and prepare for trial and do not satisfy Rule 8(a).  <u>See</u> <u>Benedict v. Amaducci</u>, No. 92 Civ. 5239 (KMW), 1995 WL 413206, at *10 (S.D.N.Y. July 12, 1995) (citing <u>Haber v. Brown</u>, 774 F.Supp. 877 (S.D.N.Y. 1991)) (holding that an allegation that merely restates the language of the statute allegedly violated provides insufficient notice to satisfy Rule 8(a)).  Thus, the only prohibition alleged is that described above, involving the combination of Chapter 12.50's permitting requirements and the defendants' delays.

ii.      <u>Saving Clause.</u>  The saving clause in subsection (c) is an affirmative defense.  <u>See</u> <u>Santa Fe</u>, 380 F.3d at 1272 n.10 (collecting cases); <u>NextG</u>

25

Networks of New York, Inc. v. City of New York, No. 03 CIV 9672 RMB/JCF, 2006 WL
538189, at *10 n.14.  Because the burden of proving this defense lies on the
defendants, the court considers only whether the facts on the face of the Complaint
would, without more, establish all elements of this defense.  See United States v.
Space Hunters, Inc., 429 F.3d 416, 426 (2d Cir. 2005).

      Because the plaintiffs do not challenge Bridgeport's compensation requirements,
the court must determine whether the plaintiffs have alleged that the regulatory actions
and ordinance provisions they do challenge "are designed to 'manage the public rights
of way,' as permitted by § 253(c) . . . ."  TCG New York, 305 F.3d at 81 (quoting 47
U.S.C. § 253(c)).  The second proposed Amended Complaint does not, on its face,
establish that the defendants' application of the permitting requirements to the plaintiffs
was designed to manage the public rights of way.

      Therefore, the court grants the motion to amend with respect to the Supremacy
Clause claim, as described above, insofar as the Amended Complaint alleges an
applied challenge to Chapter 12.50's permit requirements which, combined with
regulatory officials' delays, effectively prohibit the plaintiffs from providing pay telephone
services on Bridgeport's public rights of way.  The court denies the motion to amend as
futile with respect to any additional Supremacy Clause claims the plaintiffs may be
attempting to assert in the proposed Amended Complaint.

## IV.    CONCLUSION

      For the foregoing reasons, the defendants' motion to dismiss [**Doc. No. 58**] is
GRANTED with prejudice as to all claims requiring a private right of action under any
subsection of 47 U.S.C. § 253.  The plaintiffs' motion to amend the Complaint [**Doc.**

**No. 63**] is GRANTED in part and DENIED in part as described above.  The only surviving claims are the Supremacy Clause preemption claims (in both counts of the Amended Complaint [Doc. No. 63-2]) that are premised on Chapter 12.50's permit requirements and the defendants' delays in reviewing the plaintiffs' applications.  The plaintiffs are ordered to file the Amended Complaint.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 21st day of December, 2006.


/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge